# Illinois Official Reports

## Appellate Court

*Barnes v. Lolling*, 2017 IL App (3d) 150157

| | |
|---|---|
| Appellate Court Caption | JERRY L. BARNES Plaintiff-Appellant, v. DANIEL R. LOLLING and UNITED CONTRACTORS MIDWEST, INC., Defendants-Appellees. |
| District & No. | Third District<br>Docket No. 3-15-0157 |
| Rule 23 order filed<br>Motion to publish allowed<br>Opinion filed | May 18, 2017<br><br>June 27, 2017<br>June 27, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Fulton County; No. 13-L-18; the Hon. Steven R. Bordner, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Patrick E. Halliday and Ronald E. Halliday, of Doc Halliday Law, of Peoria, for appellant.<br><br>Matthew S. Hefflefinger and Craig L. Unrath, of Heyl, Royster, Voelker & Allen, of Peoria, for appellees. |

Panel            PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices McDade and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff Jerry L. Barnes, a former bankruptcy debtor, sued defendants Daniel R. Lolling and his employer, United Contractors Midwest, Inc. (United Contractors), for personal injuries Barnes allegedly sustained during an automobile accident. The accident took place on October 7, 2011, after Barnes had filed her Chapter 13 bankruptcy (11 U.S.C. § 1301 *et seq.* (2006)) petition and while the bankruptcy proceeding was pending. Barnes did not disclose her potential cause of action against the defendants to the bankruptcy trustee or schedule the cause of action as an asset of the bankruptcy estate. Barnes filed the instant personal injury claim on October 7, 2013, two years after the accident and approximately five months after the bankruptcy court had discharged Barnes's debts and closed the bankruptcy case.

¶ 2    The defendants moved for summary judgment, arguing that (1) Barnes's personal injury claim was barred under the doctrine of judicial estoppel because Barnes failed to disclose the claim during the bankruptcy proceedings and (2) Barnes lacked standing to sue because the personal injury action accrued while the bankruptcy case was pending and was therefore the property of the bankruptcy estate. The trial court ruled that the elements of judicial estoppel had been met and granted summary judgment for the defendants on that basis. This appeal followed.

¶ 3                                    FACTS

¶ 4    On February 8, 2008, Barnes and her husband filed for Chapter 13 bankruptcy protection to resolve their personal and business debts. Barnes completed an individual debtor petition in her name and provided all the required information. She appeared in bankruptcy court on only one occasion at the beginning of the case. Sometime in 2008, the bankruptcy court placed Barnes and her husband on a five-year debt repayment plan. Barnes and her husband made payments of $500 per month under the plan until they received a discharge from bankruptcy on April 11, 2013. During that five-year period, Barnes did not file any bankruptcy pleadings, seek any modifications to the repayment plan, or inform the bankruptcy court of any new assets, liabilities, or diminished earnings.

¶ 5    The bankruptcy court discharged Barnes's debt and closed the bankruptcy case in April 2013. The Trustee's Final Report and Account showed that, over a period of approximately five years, Barnes paid a total of $30,000 to her creditors. Barnes had $92,164.70 in unsecured debt discharged in bankruptcy.

¶ 6    On October 7, 2011, approximately 18 months prior to the discharge of her bankruptcy, Barnes was involved in a motor vehicle accident with the defendant, Daniel Lolling. At the time of the accident, Lolling was purportedly working within the scope of his employment with the defendant, United Contractors. Barnes retained counsel to prosecute her personal injury claims of negligence against Lolling and United Contractors. Eighteen days after the accident, Barnes's counsel wrote to the defendants' insurer stating that (1) he would be

representing Barnes in her claim for personal injuries against Lolling and United Contractors and (2) he anticipated that Barnes's damages from the accident "could easily exceed $50,000" in medical bills "plus lost wages." The defendants disagreed with Barnes' allegations, disputed her claim that Lolling was negligent, and denied liability.

¶ 7    On October 7, 2013, six months after the bankruptcy discharge and two years after the accident, Barnes filed the instant personal injury action against Lolling and United Contractors.[1] In her complaint, Barnes alleged that, as a result of the accident, she had suffered severe injuries, incurred medical expenses, and had lost the capacity to earn sums of money in the future that she would have been able to earn had it not been for the accident. She claimed damages in excess of $50,000. On November 22, 2013, the defendants filed an answer to Barnes's complaint in which they denied liability for the accident and asserted an affirmative defense of contributory negligence against Barnes. Barnes filed a timely answer to the affirmative defense in which she denied contributory negligence.

¶ 8    At the conclusion of discovery, the defendants moved for summary judgment on two grounds. First, the defendants argued that Barnes lacked standing to bring the suit because the personal injury claim had accrued before the bankruptcy proceedings were closed and was therefore the property of the bankruptcy estate. Second, the defendants argued that Barnes's claim was barred under the doctrine of judicial estoppel because Barnes had failed to disclose the claim as a potential asset during the bankruptcy proceedings.

¶ 9    Barnes responded to the defendants' summary judgment motion, attaching a supporting affidavit. In her sworn affidavit, Barnes asserted, *inter alia*, that (1) she did not inform the attorney representing her in the personal injury action that she had previously filed a Chapter 13 bankruptcy petition and was making monthly payments as required by the bankruptcy plan, (2) she did not know that she had a duty to report the automobile accident to the bankruptcy court, (3) as a result, she did not report the automobile accident to the bankruptcy court or inform her bankruptcy attorney of the accident, (4) she did not file any documents in the bankruptcy court after the accident, and (5) she did not intend to deceive the bankruptcy court.

¶ 10    The trial court granted summary judgment in favor of the defendants on the basis of judicial estoppel. The court's written order states:

> "Cause coming on for hearing defendants' motion for summary judgment, parties appearing by counsel and [Barnes] appearing in person, in the court hearing argument, it is ordered that the elements of judicial estoppel are met, and defendants' motion for summary judgment is granted."

The record on appeal does not include the report of proceedings or a transcript of the trial court's hearing on the motion for summary judgment. Accordingly, any statements that trial court may have made from the bench in issuing its summary judgment order have not been made available to this court for review.

¶ 11    This appeal followed.

---

[1]Barnes sued Lolling for negligence and based her claim against United Contractors on an agency theory.

ANALYSIS

1. Standing

As noted above, the trial court granted summary judgment for the defendants in this case on the basis of judicial estoppel. It did not address the defendants' alternative argument that Barnes lacked standing to bring the instant personal injury action. However, this court is not bound by the trial court's reasoning and may affirm on any basis supported by the record, regardless of whether the trial court based its decision on that basis. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11; see also *Kubichek v. Traina*, 2013 IL App (3d) 110157, ¶ 28 n.3 ("we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports"); *People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005). We hold that Barnes lacked standing to bring the instant claim for her own benefit after the bankruptcy proceeding was closed.

A Chapter 13 bankruptcy estate encompasses all property, including any legal claims acquired by the debtor after the petition is filed and before the case is closed. See 11 U.S.C. §§ 541(a)(1), 1306(a)(1) (2012); *In re Jones*, 657 F.3d 921, 927 (9th Cir. 2011); *In re Willett*, 544 F.3d 787, 791 n.3 (7th Cir. 2008); *In re Waldron*, 536 F.3d 1239, 1241 (11th Cir. 2008); *Cable v. Ivy Tech State College*, 200 F.3d 467, 472-74 (7th Cir. 1999), *overruled on other grounds*, *Hill v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013).[2] Debtors have a continuing duty to schedule newly acquired assets while the bankruptcy case is open. *Waldron*, 536 F.3d at 1244. Unless the bankruptcy court orders otherwise, property of the estate that is not expressly abandoned by the bankruptcy trustee or administered in the bankruptcy case "remains property of the estate." 11 U.S.C. § 554(d) (2012).[3] Undisclosed assets, including undisclosed legal claims accruing while the bankruptcy is ongoing, remain property of the estate even after the bankruptcy case is closed. *In re Easley-Brooks*, 487 B.R. 400, 409 (Bankr. S.D.N.Y. 2013); see *An-Tze Cheng v. K&S Diversified Investments, Inc.* (*In re An-Tze Cheng*), 308 B.R. 448, 461 (B.A.P. 9th Cir. 2004) (ruling that, under section 554(d), property of a Chapter 11 estate that is not scheduled or otherwise administered by the time the case is closed "remains property of the estate forever"). A closed bankruptcy proceeding may be reopened for the purpose of scheduling and administering previously undisclosed legal claims or other assets of the estate.

---

[2]Section 541 of the Bankruptcy Code encompasses " 'every conceivable interest of the debtor, future, non-possessory, contingent, speculative, and derivative.' " *Dailey v. Smith*, 292 Ill. App. 3d 22, 24 (1997) (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993)); see also *Shoup v. Gore*, 2014 IL App (4th) 130911, ¶ 11. Thus, any personal injury claims accruing before or during the pendency of the bankruptcy are property of the estate, even if those claims are potential and unliquidated. See *Shoup*, 2014 IL App (4th) 130911, ¶ 11.

[3]Some federal courts have held that all of the property in a Chapter 13 estate reverts to the debtor upon confirmation of the bankruptcy plan, pursuant to 11 U.S.C. §§ 1141(b) and 1327 (2012). See, *e.g.*, *Diamond Z. Trailor, Inc. v. JZ, L.L.C.* (*In re JZ L.L.C.*), 371 B.R. 412, 418 (B.A.P. 9th Cir. 2007). However, the majority of federal courts to address the issue hold that any potential legal causes of action or other assets acquired after confirmation but before discharge of the bankruptcy proceeding are property of the Chapter 13 estate. See, *e.g.*, *In re Wilson*, 555 B.R. 547, 551-53 (Bankr. W.D. La. 2016) (collecting cases); *Waldron*, 536 F.3d 1239; *In re Harvey*, 356 B.R. 557 (Bankr. S.D. Ga. 2006). We find the latter view to be better reasoned because it harmonizes what would otherwise appear to be contradictory provisions in the Bankruptcy Code. See *Wilson*, 555 B.R. at 551-53.

11 U.S.C. § 350(b) (2012); *In re James*, 487 B.R. 587, 594-95 (Bankr. N.D. Ga. 2013); *Easley-Brooks*, 487 B.R. at 409; *An-Tze Cheng*, 308 B.R. at 461.

¶ 16    Although there is a trustee in a Chapter 13 bankruptcy, the trustee acts as an advisor and administrator while the debtor remains in possession of the estate. 11 U.S.C. §§ 1302(a), 1303, 1306(b) (2012); *Cable*, 200 F.3d at 472. Accordingly, a Chapter 13 debtor can pursue legal claims for the benefit of the estate and its creditors. Fed. R. Bankr. P. 6009; *Cable*, 200 F.3d at 472-73 ("Under the reorganization chapters [including Chapter 13], the debtor-in-possession steps into the role of trustee and exercises concurrent authority to sue and be sued on behalf of the estate."); *Smith v. Rockett*, 522 F.3d 1080, 1081 (10th Cir. 2008) (collecting cases). However, the debtor lacks standing to bring such claims for his own benefit. *Smith*, 522 F.3d at 1082; *Cable*, 200 F.3d at 473-74; *Ruhl v. HSBC Mortgage Services, Inc.*, 399 B.R. 49, 55 (E.D. Wis. 2008); *Richardson v. United Parcel Service*, 195 B.R. 737 (E.D. Mo. 1996).[4] As long as the bankruptcy proceedings are ongoing, a Chapter 13 debtor can inform the trustee of previously undisclosed legal claims, and unless the trustee elects to abandon that property, the debtor may litigate the claims on behalf of the estate and for the benefit of the creditors without prior court approval. Fed. Rs. Bankr. P. 1009(a), 6009; *Smith*, 522 F.3d at 1082; *Thomas v. Indiana Oxygen Co.*, 32 F. Supp. 3d 983, 988 (S.D. Ind. 2014). Once the bankruptcy case is closed, however, a debtor no longer can pursue claims on behalf of the estate. Thus, if a legal claim that belongs to the estate is not disclosed and abandoned or administered by the trustee in the prior bankruptcy proceeding, a former Chapter 13 debtor lacks standing to bring that claim in his individual capacity and for his own benefit after the bankruptcy proceedings have closed. *123 Cutting Co. v. Topcove Associates, Inc.*, 770 N.Y.S.2d 365, 366 (App. Div. 2003) ("a debtor's failure to list a legal claim as an asset in his or her bankruptcy proceeding causes the claim to remain the property of the bankruptcy estate and precludes the debtor from pursuing the claim on his or her own behalf" (internal quotation marks omitted)); *Best v. MetLife Auto & Home Insurance Co.*, 793 N.Y.S.2d 682 (Sup. Ct. 2004); *Van Horn v. Martin*, No. 5:13-CV-74-DPM, 2015 WL 925895, at *1 (E.D. Ark. Mar. 3, 2015) (holding that former Chapter 13 debtor lacked standing to file employment discrimination claim that accrued while her bankruptcy proceeding was pending where the former debtor never disclosed or scheduled the claim as an asset during the bankruptcy and she filed the claim after she made her final payment pursuant to the Chapter 13 plan).[5]

---

[4]See also *Tucker v. Closure Systems International (CSI)*, No. 1:10-CV-1476-RLY-TAB, 2011 WL 4479112, at *2 (S.D. Ind. Sept. 27, 2011) (ruling that, because plaintiff Chapter 13 debtor did not list her employment discrimination claims as assets of the estate in her bankruptcy schedules when she initially filed those claims in court, she "was not bringing [her] claims on behalf of the estate," and therefore lacked standing to sue until she subsequently amended her schedules to include the claims); *Calvin v. Potter*, No. 07 C 3056, 2009 WL 2588884, at *3 (N.D. Ill. Aug. 20, 2009) (dismissing Chapter 13 debtor's discrimination claims for lack of standing where debtor failed to mention the claims in the bankruptcy proceeding and where the trustee had not abandoned the claims because the debtor "[did] not have standing to litigate her discrimination claims against [the defendant] for her personal benefit").

[5]We acknowledge that our supreme court recently decided a case on similar facts without addressing the Chapter 13 debtor's standing. See *Seymour v. Collins*, 2015 IL 118432. In *Seymour*, however, the plaintiffs filed their personal injury claim while the bankruptcy proceeding was ongoing. Moreover, there is no indication that the issue of standing was raised by either party in *Seymour*.

- 5 -

¶ 17    In this case, the instant personal injury claim accrued on October 7, 2011, while Barnes' bankruptcy proceeding was ongoing. The claim was therefore property of the bankruptcy estate. 11 U.S.C. §§ 541(a)(1), 1306(a)(1) (2012); *Waldron*, 536 F.3d at 1241. Nevertheless, Barnes never disclosed the claim or scheduled it as an asset during the bankruptcy proceeding even though the bankruptcy proceeding remained ongoing for another 18 months. After she was discharged from bankruptcy, Barnes filed the instant claim in her individual capacity for her own benefit. She lacked standing to do so because the claim remained property of the bankruptcy estate. *123 Cutting Co.*, 770 N.Y.S.2d at 366; *Best*, 793 N.Y.S.2d 682; *Van Horn*, 2015 WL 925895, at *1.

¶ 18    We therefore affirm the trial court's grant of summary judgment in favor of the defendants. In order to bring the instant claim, Barnes must move to reopen the bankruptcy proceeding so that she may schedule the claim as an asset of the bankruptcy estate. If the bankruptcy proceeding is reopened, Barnes will then have standing to refile the claim in her own name, provided that she does so on behalf of the estate and her creditors.[6] Alternatively, after reopening the bankruptcy proceeding, Barnes could ask the trustee to pursue the claim on behalf of the estate and the creditors.

¶ 19                                    2. Judicial Estoppel

¶ 20    Even assuming *arguendo* that Barnes had standing to file the instant claim, we would affirm the trial court's grant of summary judgment on the basis of judicial estoppel. In determining whether to bar a claim on grounds of judicial estoppel, the trial court must first determine whether the prerequisites for application of judicial estoppel have been met. *Seymour*, 2015 IL 118432, ¶ 47. In this respect, the party to be estopped must have "(1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) have succeeded in the first proceeding and received some benefit from it. [Citations.]" *Id.* If all these prerequisites have been established, the trial court must then "determine whether to apply judicial estoppel—an action requiring the exercise of discretion." *Id.* Multiple factors may inform the court's decision, among them the significance or impact of the party's action in the first proceeding and "whether there was an intent to deceive or mislead, as opposed to the prior position having been the result of inadvertence or mistake." *Id.*

¶ 21    When the trial court's discretionary application of judicial estoppel results in the termination of the litigation by summary judgment, as here, our review is *de novo*. *Id.* ¶ 49. Summary judgment is appropriate if no material fact is in dispute, if reasonable persons could not draw differing "inferences from the undisputed material facts," and if reasonable persons could not "differ on the weight to be given the relevant factors of a legal standard." *Id.* ¶ 42. In reviewing an order granting summary judgment, we strictly construe the record against the movant and view it liberally in favor of the nonmoving party. *Id.* ¶ 49. Where there are no disputed issues of material fact related to the application of judicial estoppel, we then decide whether the trial court abused its discretion in applying the doctrine.

¶ 22    In this case, Barnes took inconsistent positions by (1) failing to inform the bankruptcy court of her new asset of a personal injury cause of action, thus representing that no claim

---

[6]If the trustee expressly abandons the claim, Barnes would then have standing to pursue the claim for her own benefit. 11 U.S.C. § 554(d) (2012).

existed, and (2) filing this cause of action. She intended the courts in each proceeding to accept the truth of the facts she alleged. Moreover, she received a benefit from the bankruptcy proceeding by having more than $92,000 of her unsecured debt discharged in bankruptcy without having to increase her payments to her creditors in light of the claim. Thus, all of the prerequisites for judicial estoppel have been met.

¶ 23    The only remaining question is whether the trial court properly exercised its discretion by applying judicial estoppel to dismiss Barnes's claim on summary judgment. Although the trial court's brief written order granting summary judgment is in the record, a transcript of the oral arguments and of any statements the trial court made from the bench in granting the defendants' motion has not been made part of the record on appeal.[7] Absent such a transcript, we will not presume that the trial court abused its discretion or failed to consider the proper factors, such as whether Barnes's failure to disclose the personal injury claim in the bankruptcy proceeding was inadvertent or deliberate. To the contrary, absent an adequate record of the hearing, " 'it [is] presumed that the order entered by the trial court [is] in conformity with the law and had a sufficient factual basis.' " *Webster v. Hartman*, 195 Ill. 2d 426, 432 (2001) (quoting *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984)); see also *Mercantile Holdings, Inc. v. Feldman*, 258 Ill. App. 3d 748, 752 (1994) (affirming trial court's dismissal of the plaintiff's claim on grounds of laches and ruling that "absent a transcript of the hearing, we shall presume that the trial court exercised its discretion properly" in dismissing the claim).[8]

¶ 24    In any event, there is ample evidence in this case suggesting that Barnes's failure to disclose her personal injury claim during the bankruptcy was a deliberate attempt to mislead or deceive the bankruptcy court and Barnes's creditors. Eighteen days after the automobile accident, Barnes retained a personal injury lawyer to represent her in connection with the October 2011 automobile accident. At that time, Barnes's personal injury lawyer wrote to the defendants stating that he anticipated that Barnes's damages from the accident "could easily exceed $50,000" in medical bills "plus lost wages." Nevertheless, Barnes did not disclose her personal injury claim or report any "lost wages" or diminishment of earning capacity to the bankruptcy court during the ensuing 18 months while the bankruptcy proceedings remained pending. Nor did she file her claim or attempt to reach a settlement with the defendants during that time. Instead, she sat on her claim for almost two years and then filed the claim in her own name and for her own benefit after the bankruptcy proceedings had closed and her unsecured debt had been discharged.

¶ 25    These facts (and others) render the instant case distinguishable from *Seymour*, wherein our supreme court found no evidence that the plaintiffs intended to deceive or mislead the bankruptcy court. In *Seymour*, the court found it significant that the plaintiffs had attempted to settle their personal injury claim while the bankruptcy proceedings were ongoing, noting that if

---

[7]The trial court's one-sentence written order indicates that the court conducted a hearing on the defendants' summary judgment motion, during which the parties appeared by counsel and presented oral argument.

[8]This presumption is appropriate even though the trial court's written order is in the record on appeal because the oral pronouncement of the court is the judgment of the court, while the written order merely serves as evidence of the court's judgment. *People v. Smith*, 242 Ill. App. 3d 399, 402 (1993). Thus, if the oral pronouncement of the court and the written order conflict, the oral pronouncement of the court controls. *Id.*; see also *People v. Roberson*, 401 Ill. App. 3d 758, 774 (2010).

the plaintiffs were trying to avoid creditors, "they would have waited until after the discharge in bankruptcy to attempt to settle [their personal injury] suit." *Seymour*, 2015 IL 118432, ¶ 59. That is exactly what Barnes did in this case. Although her counsel wrote the defendants shortly after the accident, Barnes does not allege that she attempted to settle the personal claim while the bankruptcy proceeding was pending; instead, she waited almost two years and filed her claim only after the discharge in bankruptcy (unlike the *Seymour* plaintiffs, who filed their claim while the bankruptcy was pending). Moreover, the plaintiffs in *Seymour* claimed that the bankruptcy trustee had advised them that they were only required to disclose "lump sum funds received in excess of $2,000" during the bankruptcy proceeding, which would not include their potential, unliquidated personal injury claim. They submitted an affidavit from the trustee attesting to this fact, and an affidavit from their bankruptcy counsel supporting their claim that they were not required to disclose the unliquidated personal injury action. *Seymour*, 2015 IL 118432, ¶¶ 10-14. Barnes makes no such allegations here. She does not claim that the trustee in her bankruptcy case said anything suggesting that Barnes was not required to disclose unliquidated legal claims. Moreover, she admits that she never even informed her bankruptcy attorney about her personal injury claim against the defendants. She also admits that she never informed her personal injury attorney about the bankruptcy proceeding. Thus, Barnes does not and cannot claim that she acted in reliance on any advice from the trustee or from her counsel.

¶ 26    Under these circumstances, the trial court could have reasonably found that Barnes's failure to disclose the claim during bankruptcy was deliberate rather than inadvertent. In fact, the record does not support a contrary inference, even when all reasonable inferences are drawn in Barnes's favor. Moreover, Barnes's deliberate concealment of her personal injury claim had a significant impact on the bankruptcy proceeding because a legal claim that Barnes asserts is worth in excess of $50,000 was never disclosed to Barnes's creditors and Barnes succeeded in having more than $92,000 in unsecured debt discharged in bankruptcy. For these reasons and because all of the prerequisites for judicial estoppel were met, the trial court did not abuse its discretion in grating summary judgment for the defendants on the basis of judicial estoppel.

¶ 27                                              CONCLUSION
¶ 28    The judgment of the circuit court of Fulton County is affirmed.

¶ 29    Affirmed.